PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RICARDO RUBIO, Defendant and Appellant.

No. 4784. Argued November 7, 1932.—Decided April 19, 1933.

*González Fagundo & González Jr.* for appellant. *R. A. Gómez, Fiscal,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The *Fiscal* of this Supreme Court moved that the appeal taken in this case be dismissed on the ground that the notice of appeal was not served on the prosecuting attorney of the District Court of San Juan where the trial had been held and the judgment rendered, and after both parties were heard the motion was granted.

The defendant-appellant thereupon moved for a reconsideration of the decision and both parties were heard again and permitted to file briefs.

All that the record shows regarding the notice of appeal, is as follows:

"Notice of Appeal—The People of Puerto Rico v. Ricardo Rubio—Criminal No. 7339—Abandonment and Neglect of Children—To Marcelino Romaní, Prosecuting Attorney of the District Court of San Juan, and to Eduardo López Tizol, Clerk of the District Court of San Juan, P. R.

"You are hereby notified that the defendant, feeling aggrieved by the judgment rendered in this case on February 2nd instant, appeals therefrom to the Supreme Court of Puerto Rico.

"Humacao for San Juan, P. R., February 6, 1932 (Signed) R. García Cintrón—(Signed) Francisco González Fagundo—Attorneys for the defendant.

"I, Víctor Hernández Peña, being duly sworn, depose and say: That I am of legal age, an employee and resident of Humacao, and that I am not a party to these proceedings nor do I have any interest therein; that there is a regular daily mail service between San Juan and Humacao; that I have deposited today at the post office of this city, an envelope containing a true and faithful copy of the preceding motion, which envelope was addressed to the Hon. Marcelino Romaní, *Fiscal* of the District Court of San Juan, P. R., at his residence in San Juan; that the postage due thereon was duly paid. Humacao, P. R., February 6, 1932. (Signed) Víctor Hernández Peña. Affidavit No. 890.—Sworn to and subscribed before me by Víctor Hernández Peña, of legal age, married, an employee, and resident of Humacao, whom I personally know. Humacao, P. R., February 6, 1932. (Signed) Luis Pereyó, Notary Public. There is an Internal Revenue stamp of 25 ¢ duly canceled."

The *Fiscal* claims that this is not sufficient. The defendant maintains that it is.

There is no question as to the necessity of serving the notice of appeal on the prosecuting attorney in order that this Court may acquire jurisdiction of the appeal. This Supreme Court has repeatedly held that if such service is not made, the Court has no jurisdiction and the appeal must be dismissed without being heard.

The question to be decided is whether such service may be made by mail in criminal cases as is done in civil cases.

In civil cases, the law expressly provides that "the service of notice or other paper may be personal, by delivery to the party or attorney on whom the service is required to be made, or it may be as follows." The methods of making such service are then set forth, one of which is by mail. Section 320 of the Code of Civil Procedure. Sections 321 and 322 then provide as to service by mail. Those three sections are

equivalent to sections 1011, 1012, and 1013, of the Code of Civil Procedure of California.

If this were a civil case, the question would have to be decided in favor of the appellant. But this is a criminal case, and the *Fiscal* insists that it is governed exclusively by the provisions of the Code of Criminal Procedure, which only authorizes two methods of serving a notice of appeal: personal service and, when this is not possible, service by publication in a newspaper authorized by the court.

All that the Code of Criminal Procedure provides on the subject is contained in sections 350 and 351 thereof, equivalent to sections 1240 and 1241 of the Penal Code of California. Said sections textually read as follows:

"Section 350. An appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered or filed, a notice stating the appeal from the same, and serving a copy thereof upon the attorney of the adverse party.

"Section 351. If personal service of the notice can not be made, the judge of the court in which the action was tried, upon proof thereof, may make an order for the publication of the notice in some newspaper for a period not exceeding thirty days. Such publication is equivalent to personal service."

The original English text of our statute uses the verb "to serve" properly rendered in Spanish as *"entregar,"* which impliedly conveys the idea of personal service. This as to section 350 if considered by itself; in section 351 the word "personal" is employed in both texts, it being provided therein that if personal service can not be made, the judge of the court in which the case was tried, upon proof thereof, may order that service be made by publication.

The appellant admits the above conclusions, but he seems to maintain that the provisions of the Code of Civil Procedure are supplementary to those of the Code of Criminal Procedure and that, in any event, service by mail is equivalent to personal service.

To support the first proposition, the appellant confines himself to the citation of the following language appearing in Kerr's Cyclopedic Code of California, at the foot of section 1241 of the Penal Code of California: "As to service of notice generally, see Kerr's Cyc. Code Civ. Proc. No. 1010, 1013, and notes." 4 Kerr's 1183. This is very little, indeed.

And to sustain the second proposition, the appellant cites the same text writer, 3 Kerr's 1524, note (17) to section 1011 of the Code of Civil Procedure of California, thus:

*"Personal Service.*—'The delivery' which constitutes personal service need not be made by individual who is attempting to make service, but can be effected through clerk or messenger, or through any agency by which 'delivery' can be made, and when notice is so delivered service becomes personal service. Fact that person upon whom service is to be made resides or has his office in different place from that of person making service does not require service to be made by mail or preclude personal service, and person seeking to make service can avail himself of any agency such as Wells Fargo & Co., or instrumentality of post-office department with as much effect as if he had employed any other messenger. Notice through such agency renders service personal, and proof of such delivery establishes personal service.—*Heinlen* v. *Heilbron*, 94 Cal. 636, 640, 30 Pac. Rep. 8." 3 Kerr's Cyclopedie Codes of California, Part One. 1524.

If the appellant had not chosen to stand on the record when the issue was raised by the *Fiscal,* but had offered evidence showing that the envelope containing the notice of appeal was in fact delivered to, and received and opened by, the prosecuting attorney within the time fixed by law, thereby acquiring personal knowledge of the appeal, it might be held that the service by mail had become a personal one, without the aid of any express statutory provision. The appellant should not have relied only on the service by mail, as if this were a civil case. As to civil cases, the law expressly authorizes this method, and it is sufficient to prove that the envelope was deposited in the post office in order that delivery thereof

to the person to whom it is addressed be shown. It is not so in criminal cases, for which no such procedure is provided.

In the same case cited by Kerr, *Heinlen* v. *Heilbrom*, 94 Cal. 636, the opinion of the court goes on to state:

"The service by mail authorized by section 1012 does not contemplate a delivery as a part of the service, as is seen by the provision of section 1013, that 'the service is complete at the time of the deposit' in the post-office. Such a service is termed a substituted service, and is intended to take the place of, and be equivalent in point of law and effect to a personal service. Inasmuch, however, as it is the general rule that there shall be personal service of all notices in legal proceedings, and that substituted service can be made only in the cases and in the manner designated by the statute, it follows that it is incumbent upon any one who would avail himself of this mode of service to have it clearly appear upon the record that the case is one in which such service is permitted, and that the mode pointed out by the statute for making such service has been strictly followed." *Heinlen* v. *Heilbron*, 94 Cal. Rep. 640.

The fact must not be overlooked that we are faced with a purely statutory remedy and that therefore it is necessary that the law be strictly complied with in order that the remedy may be availed of. In *People* v. *Dones*, 18 P.R.R. 272, this Court, citing *City of Portland* v. *Nottingham*, 58 Oregon 1, said: "An appeal is not a matter of right, but a statutory privilege and whoever exercises that privilege is bound to do it in the form specified by law."

The parties have not cited nor have we found any cases deciding the exact question involved herein, but it seems proper to quote by way of illustration what the Supreme Court of California said in *People* v. *Brown*, 148 Cal. 743. We take the quotation on the same from the brief of the *Fiscal*, thus:

"Defendant was tried and convicted of the crime of murder, and the death penalty was imposed. He appeals from the judgment and from the order denying his motion for a new trial.

"Section 1240 of the Penal Code provides that in a criminal case 'appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered or filed, a notice stating

the appeal from the same, and serving a copy thereof upon the attorney of the adverse party.' In *People* v. *Colón,* 119 Cal. 668, (51 Pac. 1082), it was held that the proceedings specified in section 1240 must be taken to confer upon this court jurisdiction to hear and determine the appeal. *People* v. *Colón* quotes from *People* v. *Bell,* where it is said: ''The transcript herein does not show that the notice of appeal was served on anyone. The law requires that it shall be served on the attorneys of the adverse party (Pen. Code, sec. 1240); and the transcript on appeal must show it. (*People* v. *Phillips,* 45 Cal. 44; *People* v. *Clark,* 49 Cal. 455.) This not being the case, the appeal cannot be considered.' As this omission and error was called to appellant's attention by respondent's brief, and as no effort has been made to cure the omission or to show that service was in fact made, it must be concluded that no service was made, and that the court is without jurisdiction to consider this appeal.''

It seems advisable to add that, although it was not necessary, we have examined the transcript of the evidence in order to better appreciate the justice of the cause, and, at first sight, we think that were we to consider the case on its merits, the judgment appealed from should be affirmed.

Two are the questions raised by the appellant in his brief, namely, the insufficiency of the complaint and the lack of evidence to support the judgment.

The judgment was rendered in the following terms:

''. . . The court finds Ricardo Rubio guilty of abandonment and neglect of children and sentences him to 90 days' imprisonment in jail at hard labor, this sentence to be suspended pursuant to the provisions of Act No. 35 of 1931, should the defendant deposit in the office of the clerk of the court within the first three days of each month, beginning on the month of February, the sum of $50.00 to support his minor son, but should he fail to comply with this condition on any month, then the sentence of 90 days in jail shall have full force and effect and the defendant shall be imprisoned.''

The pertinent part of the complaint reads as follows:

''That since November 13, 1931, and at 26 San José Street, of San Juan, P. R., of the municipal judicial district of San Juan, P. R., which forms part of the Judicial District of the same name, the said

defendant, Ricardo Rubio, then and there, unlawfully, wilfully, maliciously, and criminally, and without lawful excuse, has completely abandoned his legitimate son, Ricardo Rubio Sacarello, aged one year and three months, without providing him with food, clothing, medicine, and all that is indispensable to support him.''

The penal provision violated is as follows:

''Section 263.—Every parent of any child who willfully omits, without lawful excuse, to perform any duty imposed upon him by law, to furnish necessary food, clothing, shelter, or medical attendance, for such child, is guilty of a misdemeanor.''

From the testimony of Carmen Sacarello, one of the witnesses introduced by the prosecuting attorney and to whom the court gave full credit, the following facts appear.

''Q. Who is your husband?—A. Ricardo Rubio.—Q. Where is he?—A. That young man there.—Q. The defendant?—A. Yes, sir.— Q. When did you marry him?—A. On October 23, 1928.—Q. During your marriage, did you and the defendant have a child?—A. A boy.—Q. What is his name?—A. Ricardo Rubio.—Q. How old is he?—A. One year and three months . . .—A. Explain to the court what you know about this case.—A. That since November 13 he gives me nothing, I mean to his minor son, and that I have asked him in every way kindly to give the boy something but he was never willing to do so. My son has been ill and I have asked him to provide him with medicines and he has told me that he does not have to give anything to his son. I have called him in every way, telling him that his son was ill and he replied that he did not have to give him anything. On Epiphany, I called him to see if he would make a present to his son and he replied that he had nothing to give him . . . I told him: 'Look here, Ricardo, I owe milk for my son, it has been refused to me.' And he replied that he did not have to give him anything. In addition to the matter of the milk, I sent him my son with torn shoes in order that he might buy him new shoes and he said he would, but he has not done so to this day.—Q. How long is it since he fails to provide for his son?—A. Since November 13.—Q. Of what year?—A. 1931.—Q. And clothing, how long is it since he has purchased some for the boy?—A. The same time.—Q. And medicine?—A. All since November 13.—Q. Where do you live with your son?—A. At number 26, San José Street.—Q. Here in San Juan?— A. Yes sir.—Q. During all that time?—A. Yes sir.—Q. Do you

know what is the defendant's occupation?—A. He has an income.—Q. What income?—A. About four hundred dollars per month.—Q. What is the source of that income, if you know?—A. A farm owned by him, one known as 'Mulas' and another known as 'Mambiche', and some others thereabouts.—Q. How do you know he has an income?—A. Because when I lived with him, he did.—Q. Has he sold that?—A. Not that I know of. The farm Las Mulas is leased to Central Pasto Viejo.—Q. How much is paid for the lease?—A. Some nine thousand dollars for the three.—The Court: Q. Is it a fact that the boy has not been provided for by his father since November 13?—A. Yes; only that any one who goes by my house is told by my mother that the boy cries because he is hungry and she begs for a quarter to buy milk for the boy.—Q. Then the boy cries because he is hungry?—A. Yes, sir.''

The claim of the appellant that a civil action of support was pending and that because of the divorce, the father, having lost the custody of and the patria potestas over the boy, is not bound to support him except when it is shown that the mother is insolvent, is groundless.

For the foregoing reasons, the reconsideration must be denied.

Mr. Justice Hutchison and Mr. Justice Córdova Dávila concur.